**Eric G. KAUFMAN et al., Appellants,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al.,
Appellees.**

**Ernest ATTENHOFER et al., Appellants,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al.,
Appellees.**

**Nos. 13822, 13823.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 21, 1957.
Decided June 20, 1957.

Mr. Robert E. Sher, Washington, D. C., with whom Messrs. Isadore G. Alk and James H. Heller, Washington, D. C., were on the brief, for appellants in No. 13822.

Mr. Edmund L. Jones, Washington, D. C., with whom Mr. C. Frank Reifsnyder, Washington, D. C., was on the brief, for appellants in No. 13823.

Mr. David Schwartz, Atty. Dept. of Justice, with whom Messrs. George B. Searls, Paul E. McGraw, Sidney B. Jacoby and Ernest S. Carsten, Attys.,

---

Dept. of Justice, were on the brief, for appellees.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

These are consolidated appeals lodged by two groups of intervenors in the corporate action commenced in 1948 by Societe Internationale, a Swiss corporation, formerly called I. G. Chemie, but now commonly known as Interhandel. Commencing in February 1942, the Attorney General or his predecessors issued a series of vesting orders by which, under the Trading with the Enemy Act,[1] the Government had seized some 93% of the stock of General Aniline & Film Corporation (hereinafter called GAF), said to have been the property of foreign nationals or owned by or held for I. G. Farbenindustrie A.G. of Germany. Background facts in substantial measure may be gleaned from our opinion in Societe Internationale, etc. v. Brownell.[2] In the latter action, the Kaufman group was permitted to intervene,[3] after which the Attenhofer group was also allowed[4] intervention over the opposition of the Kaufman group. In all, some 2,488 stockholders intervened; the complaints of 720 were dismissed; and the remaining 1,768 stockholders own a total of 41,683 shares, found by the District Court to represent 15.439% of the total outstanding stock of I. G. Chemie at the date of vesting. When the Attorney General announced on February 21, 1957, a proposed public sale of 75% of the shares of the vested GAF stock, appellants sought to enjoin the sale of any of the vested shares. Judge Pine denied motions for an injunction, and after ap-

pellants had moved jointly for rehearing, the District Court on March 15, 1957, made findings of fact and conclusions of law with respect to both motions for injunction and joint motion for rehearing. The same day two orders were entered denying all motions and these appeals followed.

Appellants in the Kaufman group claim, in effect, that theirs is a corporate derivative action which entitles them ultimately to the return of "the innocent proportion" of the vested assets and that such portion may well exceed 80% of the vested property.

Appellants in the Attenhofer group claim that the District Judge misconstrued the decision of the Court in Kaufman v. Societe Internationale, erred in holding that the various appellants represent only themselves and not all nonenemy stockholders of Interhandel, and further, briefly, erred in holding that retention of 25% of the vested stock is sufficient in view of the respective claims.

Both groups insist that § 9(a) of the Trading with the Enemy Act[5] requires that *all* vested property here involved "shall be retained" by the Custodian once suit is brought and until final judgment. Without our particularizing as to further details of the grounds upon which reversal is sought, we turn to the Kaufman case which we deem controlling.

The Court pointed out, as it supplied the background upon which intervention was permitted, that petitioners "admitted the right of the Custodian to retain an interest in the seized assets proportional to the stock ownership of enemy stockholders."[6] Thus the question was, said Mr. Justice Black, "What *part* of the assets of a corporation organized

---

1. 40 Stat. 411, as amended, 50 U.S.C.A. Appendix, §§ 1–40 (1952).

2. 1955, 96 U.S.App.D.C. 232, 225 F.2d 532, certiorari denied, 1956, 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818; and see Societe Internationale, etc. v. Brownell, 100 U.S. App.D.C. 148, 243 F.2d 254.

3. Kaufman v. Societe Internationale, 1952, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853.

4. Following the District Court's order, motion for leave to file petition for a writ of mandamus was denied, Kaufman v. Pine, 1952, 344 U.S. 891, 73 S.Ct. 214, 97 L.Ed. 689.

5. Supra note 1, 50 U.S.C.A.Appendix, § 9 (a).

6. 343 U.S. at page 158, 72 S.Ct. at page 612.

under the laws of a neutral country may the Custodian retain where *part* of the corporate stock is owned by enemies, *part* by American citizens, and *part* by nonenemy aliens?" [7]

The answer, in paraphrase, ran to the effect that all corporate assets may be seized, whereupon consideration must be given to the plight of innocent stockholders whose innocent interests are not required to be confiscated. Accordingly,

"Our holding is that when the Government seizes assets of a corporation organized under the laws of a neutral country, the rights of innocent stockholders to an interest in the assets proportionate to their stock holdings must be fully protected. This holding is not based on any technical concept of derivative rights appropriate to the law of corporations. It is based on the Act which enables one not an enemy as defined in § 2 to recover any interest, right or title which he has in the property vested. The innocent *stockholder* may not have title to corporate assets, but *he* does have an interest which Congress has indicated should not be confiscated merely because some others who have like interests are enemies." [8]

The Kaufman petitioners there had attacked the position of the corporation, Interhandel, which sought return of "all its assets" on the theory they would suffer if "whatever return is obtained must be divided among enemy and nonenemy shareholders in proportion to their stock holdings." [9]

The Government, agreeing with the position of the corporate management, argued that if nonenemy stockholders were to be given any standing, they should be limited to individual suits for money judgments against the Custodian. "Petitioners claim a proportional right or interest in the specific assets of Interhandel * * *." [10] Having so taken account of the respective arguments, and permitting maintenance of the corporate action, the Court then cut through the "corporate veil" and allowed—*in that corporate action*—the "nonenemy stockholder *in his own right* [to] * * * assert *his* nonenemy character in order to protect *his own interest* from the enemy taint caused by other stockholders." [11]

To us the Court is speaking clearly, succinctly and positively. To avoid multiplicity of actions by thousands of individual shareholders, a corporate action may be brought as one had been brought. In that action an individual stockholder might intervene, and on the basis of his own entitlement, his individual right might be asserted. If he could not prove his right, that ended the matter, but at least he might intervene to show his own nonenemy character. Thus, the petitioners, represented then by the Kaufman group, were allowed to intervene over the strong dissent which saw the majority permitting a friendly stockholder to withdraw his contribution to the funds of the corporation. [12]

We are no longer concerned with the problem of a corporate recovery, for the corporation's suit has been dismissed. [13] We thus conclude as did the Court, that each innocent nonenemy stockholder [14] permitted to intervene in the corporate suit, has a "severable interest in corporate assets seized by the Custodian * * *." [15] When his right is estab-

---

7. Ibid. (Emphasis supplied.)

8. 343 U.S. at pages 159–160, 72 S.Ct. at page 613. (Emphasis supplied.)

9. Id. 343 U.S. at page 160, 72 S.Ct. at page 613.

10. Id. 343 U.S. at page 161, 72 S.Ct. at page 613.

11. Ibid. (Emphasis supplied.)

12. 343 U.S. at page 168, 72 S.Ct. 611.

13. Supra note 2.

14. von Opel v. Brownell, 1957, 100 U.S. App.D.C. 341, 244 F.2d 789.

15. 343 U.S. at page 161, 72 S.Ct. at page 614.

lished and the extent of that severable interest is shown, the courts have "adequate equitable power and procedural flexibility to protect all interests," [16] including that of the Government.

Section 9(a) of the Act provides that when the court in an equity action finds an individual claimant's interest has been established, it shall order the "payment, conveyance, transfer, assignment, or delivery * * * of the money or other property * * * or the interest therein to which the court shall determine said claimant is entitled"; not the property or interest therein of some *other* claimant, or even of all claimants similarly situated, but of that to which "*said claimant*" is entitled, as established in the suit he instituted. "[S]uch money or property" commanded to be retained pending final judgment or decree can only be that to which claim is made by the claimant authorized by § 9 to institute the action reflecting his own "severable" right.

It follows that the intervenors here were not entitled to enjoin the sale of assets aggregating in value some $100,-000,000 pending ascertainment (1) of their right and (2) the extent of their respective interests following the establishment of their severable rights.

But, it is argued, the District Court in any event erred in finding that the interests of the intervening groups did not exceed 25% of the vested assets, indeed that it was error to find such interests amounted to only 15.439% of the total outstanding stock of I. G. Chemie at the date of vesting. We cannot say the District Court abused its discretion or otherwise erred in retaining 25% of the vested assets to answer to such claims and interests as shall be established.

Affirmed.