INTERNATIONAL MORTGAGE & INVESTMENT CORPORATION (derivatively by Edward H. Heims et al.), Applicant for Intervention,

Edward H. Heims et al., etc., Individually, Joint applicants for Intervention,

Hans Kroch et al., etc., Individually, Joint applicants for Intervention, Appellants,

v.

Werner C. VON CLEMM and Rayford W. Alley, Trustee, co-partners under the name of Bridge Import Company, a co-partnership, and Werner C. Von Clemm, individually, Plaintiffs-Appellees,

and

Elizabeth Rudel Smith, Treasurer of the United States, Robert F. Kennedy, Attorney General of the United States, and Pioneer Import Corporation, Defendants-Appellees.

No. 158, Docket 27178.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1961.

Decided April 5, 1962.

Henry F. Butler, Washington, D. C. (Amos J. Peaslee, Jr., New York City, on the brief), for appellants International Mortgage & Investment Corp. and Edward H. Heims.

George Eric Rosden, Washington, D. C. (Waldemar J. Dittmar, New York City, on the brief), for appellants Hans Kroch, and others.

Alexander Kahan, New York City, for plaintiffs-appellees Werner C. Von Clemm, and others.

Michael A. Berch, Asst. U. S. Atty., Southern Dist. of New York, New York

City (Robert M. Morgenthau, U. S. Atty., and Eugene R. Anderson and David Klingsberg, Asst. U. S. Attys., on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

Whether shareholders and equitable owners of a corporation claiming ownership of property seized by the Alien Property Custodian may intervene as parties defendant in a suit by other claimants to the vested property against the Office of Alien Property so that they may protect their corporate and individual rights is the question for decision on this appeal.

The suit was commenced in July 1960 by Werner Von Clemm and Rayford W. Alley, Trustee, co-partners of Bridge Import Company and Von Clemm individually, against the Treasurer and the Attorney General of the United States, under § 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), for recovery of the common stock of Pioneer Import Corporation, a New York company, and the proceeds of the sale of certain precious stones, all alleged to be worth over $900,000. The stock of Pioneer and the precious stones are also claimed by International Mortgage & Investment Corporation (IMC), organized in Maryland in 1926, of which two-thirds of the stock was vested by the Alien Property Custodian. It is to protect this claim of IMC that two groups of stockholders in IMC are here seeking to intervene.[1] One group, the Heims claimants, consists of eight individuals, an estate, a foundation and a company, all of whom claim to be American citizens since prior to 1939 and all of whom claim ownership of IMC common and preferred stock since prior to 1939.

The second group of IMC stockholders are the Kroch claimants, consisting of Hans Kroch and members of his family, Jewish residents of Germany under Hitler, who claim that they were the owners of approximately one-third of IMC's preferred stock before the Hitler regime appropriated the property by compelling transfer of the stock to a German bank. Ultimately this stock was vested by the Alien Property Custodian.

I.

Notice of claim to the Pioneer stock and precious stones was filed by Von Clemm and Alley at some time prior to May, 1949. Other notices of claim to this property and to the vested IMC stock were filed after May, 1949. There followed administrative proceedings under 50 U.S.C.A.Appendix §§ 9(a), 32(a), to determine which, if any, of the claims should be allowed. On June 14, 1955 the Chief Hearing Examiner of the Office of Alien Property recommended that the IMC stock of which the Krochs had formerly been deprived be returned to them. On April 9, 1959, the Chief Hearing Examiner recommended that the derivative claims of IMC by the Heims group to the Pioneer stock and to the precious stones be allowed. All these recommendations, though in one case made almost seven years ago and in the other three years ago, are still awaiting review by the Director of the Office of Alien Property and by the Attorney General.

As Von Clemm and Alley were dissatisfied with the Examiner's recommendations, they commenced this suit which raises the same questions already passed upon by the Hearing Examiner.[2] All the

1. The vested IMC stock of course gave control of IMC first to the Custodian and then to his successor, the Office of Alien Property, the latter is within the jurisdiction of the Attorney General. The directors of IMC, chosen entirely from the staff of the Office of Alien Property, have not at any time asserted a claim to the Pioneer stock or to the precious stones on behalf of IMC.

2. This suit may be instituted before the administrative action is completed, is independent of any administrative action taken, and requires the court to make a plenary *de novo* adjudication of all the controverted issues. Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604 (1921); Schilling v. Rogers, 363 U.S. 666, 680, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (dissent). Moreover § 9(a) requires the

parties to the suit are now united as to only one thing and that is that they wish to prevent intervention by IMC or persons interested in IMC. The would-be interveners, barred from instituting suit against the United States by failure to file notice of claim prior to May 1949,[3] see 50 U.S.C.A.Appendix, § 33, Grabbe v. Brownell, 247 F.2d 402 (2 Cir. 1957), sought in the district court leave to intervene both as parties plaintiff and as parties defendant. The district court denied their petitions in an opinion reported at 27 F.R.D. 488 (1961). On appeal they seek only to be permitted to intervene as parties defendant. We hold that petitioners should have been given such permission under Rules 24(a) (2) and 24(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.

■ An order denying intervention as of right is clearly appealable, Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951).

## II.

The appellants contend that they have a right to intervene as parties defendant in this action under Rule 24(a) (2) of the Federal Rules of Civil Procedure which provides that "Upon timely application anyone shall be permitted to intervene in an action; * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." We agree.

IMC's claim to the property gives it an interest which can be asserted derivatively by the Heims claimants as minority stockholders. Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604 (1921).

■ Each non-enemy stockholder in IMC has an individual interest in the assets of IMC proportionate to his stockholdings; this interest is sufficient to give him the right to intervene under Rule 24(a) (2) in his own right in an action by IMC to recover these assets— at least where there is sound reason for belief that IMC may fail adequately to protect his interest. Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853 (1952).

■ Whether a stockholder's interest in the corporate assets is also sufficient to permit him to intervene when the corporation is willing and able to protect his rights is left unresolved by Kaufman. But such decisions as we have found indicate that each stockholder must himself assert his own right to a pro-rata share of the vested assets and that neither the corporation or other stockholders can recover on behalf of non-enemy stockholders not present in the action. See Kaufman v. Brownell, 101 U.S. App.D.C. 147, 247 F.2d 553 (1957); Societe Internationale v. McGrath (McGranery), 17 F.R.Serv. 394 (D.C.D.C. 1952). If this is so, each stockholder has patently a sufficient "interest" in the vested property to entitle him to intervene under Rule 24(a) (2) in an action for recovery of the property and this remains true regardless of the presence in the action of the corporation or of other stockholders.

■ Apparently the Office of Alien Property, which recognizes the applicability of Kaufman v. Societe Internationale to administrative proceedings, see In the Matter of Maria, Comtesse de Beurges, Title Claims 42430, 43996, 43997, Docket 57 T 38–40, recommended decision, June 27, 1957, approved, August 15, 1957, has in the present case permitted both IMC and the various persons in-

---

Office of Alien Property to retain the subject matter of the suit until the final disposition of the action.

**3.** Section 9(a) would permit them to sue Von Clemm after he had recovered the

vested property, at least if they are eligible, as required by § 32(e), Trading with the Enemy Act, for an administrative return under § 32(a) (2).

terested in IMC to participate in the administrative proceedings concerned with the property claimed by Von Clemm. But even if in the administrative proceedings the right of persons interested in IMC to press their individual claims is regarded as conditioned on the failure of IMC to press its claim or adequately to protect their rights, or on a preliminary finding that IMC is enemy-tainted, we cannot be certain at this time that any of these conditions will not be satisfied while the suit is still in progress. For, although the recommended decision of the Chief Hearing Officer would recognize the claims of IMC to the vested property, that tentative determination is still subject to modification or reversal by the Director of the Office of Alien Property, significantly termed "initial," which in turn may be modified or reversed by the "final" decision of the Attorney General. 8 Code Fed.Regs. § 502.23 (1961). Thus a later decision may hold that IMC is enemy-tainted while recognizing the rights of various of the intervenors to recover, under Kaufman, their pro-rata shares. At that point there could be no doubt as to the sufficiency of the interests of the stockholders. We see nothing to be gained, and a possibility of serious inconvenience, in refusing to permit stockholders in IMC to intervene in their own right until such a determination is made. We see no reason to distinguish between the Heims and the Kroch appellants. Even though the claim of the Kroch appellants to 30% of the stock is still in the process of determination, the fact that the preliminary decision of the Hearing Examiner has been in their favor seems to us to give them sufficient interest in a litigation which may virtually terminate their chances ever to regain property taken from them over 20 years ago.

Plainly the various interests of appellants are not and probably will not be adequately represented by the "existing parties." Von Clemm and Alley can only recover upon a showing of their beneficial ownership of the property, Manufacturers Trust Company v. Kennedy, 291 F.2d 460, 467–468 (2 Cir. 1961); therefore they will seek to defeat the interests of those who are seeking to intervene. We see little basis for supposing that the Attorney General and the Treasurer of the United States will adequately protect the interests of appellants. The property with which the suit is concerned was seized many years ago by the Alien Property Custodian, and the litigating arm of the Office of Alien Property, successor to the Custodian, has consistently opposed its return to appellants. Moreover, the directors and officers of IMC, chosen from the staff of the Office, have shown a conspicuous disinterest in asserting the rights of IMC to the vested property. There is no reason for us to suppose that the Department of Justice, of which the Office of Alien Property is a part, will exhibit any enthusiasm for pressing appellants' claims in the courts.

■■ We also conclude that appellants satisfy the requirement of Rule 24 (a) (2) that an applicant for leave to intervene "is or may be bound" by the judgment. Significantly Rule 24(a) (2) encompasses not only cases in which petitioners are bound by the outcome of the action but also instances in which the petitioners "may be bound." Bearing in mind that Rule 1 of the Federal Rules of Civil Procedure requires that the Rules be construed "to secure the just, speedy and inexpensive determination of every action," we conclude that in determining whether an applicant "is or may be bound," the district court is required to apply a practical test. See Kozak v. Wells, 278 F.2d 104, 110–111 (8 Cir. 1960). Since a judgment for the plaintiffs Von Clemm and Alley might result in the property being placed beyond the petitioners' reach and the presence of petitioners in the action will aid in the resolution of the principal issue in the case, namely the beneficial ownership of the vested property immediately prior to its vesting, see Clark v. Uebersee Finanz-Korp., 332 U.S. 480 (1947); Manufacturers Trust Company v. Kennedy, supra,

we hold that the petitioners are or may be bound by the judgment in this case. See Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853 (1952).

■ It is enough under Rule 24(a) (2) that an adverse judgment would seriously prejudice those who seek to intervene, at least where allowance of intervention wil not introduce extraneous issues into the suit, threaten to disrupt the action, or run counter to the policy of the statute under which the action is brought. Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951) and Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) are not to the contrary. Both were government antitrust actions where the allowance of intervention by private persons would have defeated the policy of not encumbering government antitrust suits with a multitude of collateral issues and of assuring to the government full control of the prosecution and settlement of such public antitrust actions. See Sam Fox Publishing Co., supra, at pages 688–690, 81 S.Ct. 1309; United States v. Bendix Home Appliances, 10 F.R.D. 73, 77 (S.D. N.Y. 1949)

### III.

■ The prospective intervenors also urge that they come within Rule 24(a) (3) which grants, upon timely application, therefor, the right to intervene "(3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in

the custody or subject to the control or disposition of the court or an officer thereof." Again we agree.

Since we have already concluded that appellants each have a substantial interest in the property in litigation and that they may be bound by the judgment, *a fortiori* they are "so situated as to be adversely affected by a distribution or other disposition of this property. * * *"

It remains only to consider whether the property is "in the custody or subject to the control or disposition of the court * * *" Plainly the property is not in the "custody" of the court since it is retained by the Office of Alien Property. We think, however, that property so held is "subject to the control or disposition of the court." So far as Societe Internationale v. McGrath (McGranery), 17 F.R.Serv. 394 (D.C.D.C. 1952) is to the contrary, we disagree.[4]

Rule 24(a) (3) is an outgrowth of historic equity practice permitting a stranger to assert a claim to property *in custodia legis*,[5] see 4 Moore, Federal Practice, Para. 24.03. This provision as originally enacted referred only to property "in the custody of the court * * *" but it was in 1946 amended, 329 U.S. 853, to comprehend property "subject to the control or disposition of the court * * *" The 1946 amendment was intended to cover "the situation where property may be in the actual custody of some other officer or agency—such as the Secretary of the Treasury—but the control and disposition of the property is

4. Societe Internationale v. McGrath (McGranery) apparently reads Rule 24(a) (3) as requiring that property be subject not only to the disposition of the court but also to the court's "control." Even under this reading, however, the decision gave a far more restrictive interpretation to the "control" requirement than it has been accorded in other cases, most of which are subsequent to this decision. See, e. g., Sutphen Estates v. United States, 342 U.S. 19, 22, 72 S.Ct. 14, 96 L.Ed. 19 (1951); Peckham v. Ronrico Corp., 211 F.2d 727 (1 Cir. 1954);

Peckham v. Family Loan Co., 212 F.2d 100 (5 Cir. 1954); Clark v. Sandusky, 205 F.2d 915 (7 Cir. 1953); Formulabs, Inc. v. Hartley Pen Co., 275 F.2d 52 (9 Cir. 1960).

5. "Intervention," says Professor Moore, "may here be justified even though the court's jurisdiction over the property be not truly *in rem*, its action being incapable of cutting off the rights of one not a party, and even though remedies other than intervention may be available." 4 Moore, Federal Practice, ¶24.09 [1].

lodged in the court wherein the action is pending." Notes of Advisory Committee on Amendments to Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.

Section 9(a) of the Trading with the Enemy Act specifically provides that upon institution of suit, the property which is the subject of the action "shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States" until the termination of the action. The last paragraph of § 12 of the Act specifically requires the property to be paid over in accordance with the final adjudication of the court. That these provisions subject the vested property to the "control or disposition" of the district court we have no doubt. Accordingly appellants also have a right to intervene pursuant to Rule 24(a) (3).

### IV.

■ We reject the contention, advanced by all the appellees, that since the appellants cannot sue the United States, they may not intervene as parties defendant. The argument runs that this is a suit against the United States; that the United States has not consented to be sued by the appellants, whose claims were filed after the cut-off date for claims on which suit could be brought. Therefore, since the appellants cannot intervene as parties plaintiff, see United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), they cannot intervene as parties defendant and thus obtain indirectly what they cannot get directly, namely a determination that IMC rather than Von Clemm and Alley is the pre-vesting owner of the Pioneer stock and precious stones.

The short answer is that however strong the evidence in appellants' favor may be, they can do no more in this action than defeat plaintiffs' claim to the property; any determination of appellants' interest in the property is purely incidental to determination of the plaintiffs' rights. There can be no judgment against the government in favor of any of the appellants. The judicial determination cannot force final resolution of the administrative proceedings in appellants' favor if for no other reason than that the Attorney General may fail to determine that return to any of the appellants of any of the property "is in the interest of the United States," 50 U.S. C.A.Appendix, § 32(a) (2) (E), (5), and therefore refuse to approve the return.

Moreover, no authority has been cited to us, nor are we aware of any, for the proposition that the consent of the United States is necessary to the intervention as a party defendant of one otherwise qualified to intervene for the purpose of asserting various defenses on behalf of the United States.

United States v. Sherwood, supra, establishes no more than that a judgment creditor may not sue the government under the Tucker Act for an alleged breach of its contract with the judgment debtor since the United States has not consented to such a suit, at least where a preliminary issue would be the right of the creditor to recover on his debtor's contract. Likewise the creditor of an alien whose property has been seized by the United States may not sue under § 9(a) of the Trading with the Enemy Act, since Congress has provided that administrative proceedings shall be the exclusive remedy for an alien's debt claimants, Cabell v. Clark, 162 F.2d 153 (2 Cir. 1957). But even formerly when debt claimants were allowed to sue under § 9 (a), it was established that the United States had not consented to suit by the judgment creditor of an alien to satisfy his debt from the vested property when the debt had not been incurred in connection with the vested property. De La Mettrie v. James, 272 U.S. 731, 47 S.Ct. 264, 71 L.Ed. 496 (1927). A fortiori, therefore, a receiver acting for the judgment creditor could not intervene as a party plaintiff in such an action, De La Mettrie, supra.

■ All the above cases however stand only for the proposition that the United States must consent to be sued; they do not support the proposition that

the United States must consent to be defended. Indeed in De La Mettrie both the United States and the prevesting owner were joined as parties defendant but it does not appear that the United States ever consented to the joinder or that the joinder was ever questioned.

Even in Uebersee Finanz Corporation, A. G. v. Brownell, 116 F.Supp. 145 (D.D. C. 1953), affirmed sub nom. Von Opel v. Uebersee Finanz Corporation, 96 U.S. App.D.C. 230, 225 F.2d 530 (App.D.C. 1955) where Margot von Opel, receiver and sequestrator of the property of Fritz von Opel was not permitted to intervene as a party plaintiff in a § 9(a) suit by Fritz von Opel to recover vested property, the district court noted, 116 F.Supp. at 147–148, that persons claiming ownership in the vested property prior to vesting had been permitted to intervene as parties defendant

> "* * * to answer the complaint of Fritz von Opel and to assert any interest they may have as against Fritz von Opel, without prejudice to their rights to apply for leave to assert any other interest and without any determination by the Court at that time as to their rights to assert such other interest * *
>
> "[I]ntervention was granted so that a determination of all of the rights in the property, beneficial and legal, at the time of vesting might be made."

▮ Whether the district judge in the Uebersee case thought intervention as parties defendant by prevesting owners was as of right or whether he deemed intervention merely as allowable in his discretion we cannot tell. But we believe he was right in distinguishing between the allowance of leave to intervene as a party defendant and leave to intervene as a party plaintiff in a suit against the United States. He also correctly recognized that at issue in a § 9(a) proceeding is not legal title to the vested property, but rather its beneficial ownership at the time of vesting, see Manufacturers

Trust Company v. Kennedy, 291 F.2d 460, 467–68 (2 Cir. 1961), and that permitting all claimants to prevesting ownership to intervene as parties defendant would aid in the resolution of that question.

In this case we can see no reason why the defense of the action should be wholly within the control of officers of the government.

Since we conclude that all the appellants may intervene as parties defendant as of right, it is unnecessary for us to review for possible abuse of discretion the order of the district judge so far as it denied permissive intervention under Rule 24(b), Federal Rules of Civil Procedure.

The decision of the district court is reversed and the case remanded with instructions to permit the appellants to intervene as parties defendant.

HAYS, Circuit Judge (concurring).

I concur in the result on the ground that appellants are entitled to intervene as of right under Rule 24(a) (3) for the reasons stated in the opinion of the court. It is my view, however, that the opinion, insofar as it would grant intervention under Rule 24(a) (2), is contrary to the prevailing, and correct, interpretation of that section.

Rule 24(a) (2) provides for intervention as of right

> "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by the judgment in the action."

While the government's representation of the appellant's interests "may be inadequate," appellant will not be "bound" by the judgment in this action.

The Notes of The Advisory Committee on Rule 24 state that "[t]his rule amplifies and restates the present federal practice at law and in equity * * * See generally Moore and Levi, Federal Intervention: I The Right to Intervene and Reorganization (1936), 45 Yale L.J. 565." See also Proceedings of the Institute on

Federal Rules 265–66 (Cleveland, Ohio, July 21–23, 1938) (rule intended to codify and clarify existing law, citing Moore and Levi, supra); Proceedings of the Institute on Federal Rules 67 (Washington, D. C., Oct. 6–8, 1938) (remarks of Dean, now Judge, Clark citing Moore and Levi, supra, for explanation of the operation of the rule).

The cited article, upon which complete reliance was placed by the framers of the rule for an exposition of its purpose, makes perfectly clear that "bound by the judgment in the action" was used and understood exclusively in the sense of a judgment which would be *res judicata* as to the intervenor's rights and which would legally preclude further litigation of those rights. 45 Yale L.J. at 591; Accord 4 Moore, Federal Practice ¶24.08 (2d Ed. 1950).

The Supreme Court has so interpreted Rule 24(a) (2). In Sutphen Estates, Inc. v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951), a case involving a reorganization of Warner Bros. under a Sherman Act decree, intervention was sought for the purpose of protecting a guarantee made by the corporation. Intervention was denied by the Supreme Court:

> "Appellant, however, is not a privy of Warner; its rights not only do not derive from Warner, they are indeed adverse to Warner. The decree in this case, like that in Credits Commutation Co. v. United States, 177 U.S. 311, 20 S.Ct. 1636, 44 L.Ed. 782, therefore is not res judicata of the rights sought to be protected through intervention."

342 U.S. at 21, 72 S.Ct. at 16. Accord Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309 (1961).

The language of the Court in Sutphen applies exactly to the case at bar. Appellants are privies of neither plaintiffs below nor the government and their interests are adverse to both. A judgment would not be *res judicata* of the rights sought to be protected through interven-

tion. Indeed appellants concede that if intervention is not permitted and plaintiffs prevail in the main action, "the appellants will be forced to institute an action in New York against the plaintiffs for the purpose of turning over the said property to IMC." Similarly the principle of *res judicata* would not prevent an action by appellants against the government. They cannot bring such an action only because they are barred by the running of the limitations period.

The opinion of the Court suggests that the applicants may be "bound" by a judgment for the plaintiffs because it may result in the property being put outside their reach. Whether or not this is so, it is clear that it is subdivision three of Rule 24(a) which is applicable to the situation. Subdivision three is designed for precisely the purpose of protecting a claimant of specific property which may be distributed as a result of a judgment in the action. The court thus relies upon a reason which is the very reason for the existence of subdivision three as the basis for expanding subdivision two beyond its proper scope. In this case the result is the same, but in other contexts the court's interpretation of the rule would create an absolute right to intervene in situations in which the trial court should exercise discretion, situations in which applicant will be no more than inconvenienced by non-intervention, and the trial court should be permitted to weigh the various equitable considerations that should enter into a decision on the question of permissive intervention. The court's opinion tends to obliterate the distinction between intervention as of right and permissive intervention. Rule 24(a) (2) and (3) require that applications to intervene be granted regardless of considerations of trial convenience, introduction of extraneous issues, confusion and delay whenever the judgment may permanently foreclose applicant from the assertion of his rights, either because the judgment will have a *res judicata* effect or because specific property may be dispersed. Rule 24(b)

requires that "[i]n exercising its discretion [as to whether to permit] the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The majority opinion is in error in its use of 24(b) criteria to support the conclusion that 24(a) (2) is applicable.

It is true that in Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853 (1952), an action for the recovery of property under the Trading with the Enemy Act, stockholders of plaintiff corporation were permitted to intervene under 24(a) (2), although the opinion indicates that they would not have been bound by the judgment. The importance of·the Kaufman opinion was in establishing the right of stockholders to assert rights under the Trading with the Enemy Act separate from those of their corporation. Having established that principle, Mr. Justice Black added, almost, it seems, as an afterthought, that the stockholders were entitled to intervene under Rule 24(a) (2). The opinion did not consider the proper interpretation of the term "bound," but cited Sutphen Estates v. United States, supra, as the sole authority for its conclusion. As noted above, the Sutphen opinion strongly supports the *res judicata* requirement of 24(a) (2). It may be further pointed out that Kaufman was a proper case for the application of 24(a) (3) and the result was therefore correct under any view of the law. In any event, the Court in Sam Fox Publishing Co. v. United States, supra, decided during the last term of the Court, made it very clear, citing Sutphen but not mentioning Kaufman, that its present conception of Rule 24(a) (2) limits its application to cases in which the judgment in the main action would legally preclude the applicant under the rule of *res judicata*.

"[A]ppellants argue that even should they not be legally precluded from bringing a private action, nevertheless the very existence of the *outstanding decree* would as a matter of comity either preclude further relief or operate to limit the relief some future equity court might decree. Although there is no reason why such a court need consider the present decree as anything but a minimum towards insuring broader representation and more favorable income distribution should a claim for further relief be made out, there is considerable weight to the argument that the court will feel constrained as a matter of comity at least to build on the foundations of the present decree. Cf. United States v. Radio Corporation, [D.C.] 3 F.Supp. 23. However, it is abundantly clear that this effect is not at all the equivalent of being legally bound, which is what must be made out before a party may intervene as of right. See Credits Commutation Co. v. United States, 177 U.S. 311 [20 S.Ct. 636, 44 L.Ed. 782]; Sutphen Estates, Inc. v. United States, supra; Cameron v. President and Fellows of Harvard College, [1 Cir.] 157 F.2d 993; Jewell Ridge Coal Corp. v. Local No. 6167, [D.C.] 3 F.R.D. 251" (366 U.S. at 694, 81 S.Ct. at 1315).