66 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John D. ARCHER, Plaintiff-Appellant,
v.
Bruce BABBITT, Secretary of the Interior; Lloyd H.
Ferguson, District Manager, U.S. Bureau of Land Management;
Wallace A. Evans, Area Manager, Pocatello Resource Area,
Bureau of Land Management, Defendants-Appellees,
and
J.R. Simplot Company, Inc., a Nevada corporation,
Defendant-Intervenor-Appellee.
 No. 94-35514.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1995.*
Decided Sept. 7, 1995.
 
 Before: WRIGHT, BEEZER and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Bureau of Land Management granted intervenor J.R. Simplot Co. a right-of-way over federal lands to build a phosphate slurry pipeline. Archer challenges the agency's decision on two fronts. He asserts that the BLM did not recognize that it could require Simplot to operate the pipeline as a common carrier and that even if it did, it failed to consider requiring common carriage as an alternative. He also complains that the BLM did not compile an adequate record from which to determine the effect of the proposed pipeline on competition, so that its decision, unsupported by evidence, is necessarily arbitrary and capricious.
 
 
 3
 The IBLA and the district court rejected these arguments, as do we. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I. STANDARD OF REVIEW
 
 4
 We review de novo a grant of summary judgment. Nevada Land Action Ass'n v. Forest Service, 8 F.3d 713, 716 (9th Cir.1993). "In the context of reviewing a decision of an administrative agency, de novo review means that we view the case from the same position as the district court." Id. (quotation omitted).
 
 
 5
 We review decisions of the IBLA pursuant to the Administrative Procedures Act. Fallini v. Hodel, 963 F.2d 275, 277 (9th Cir.1992). Under the APA, we uphold the IBLA's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). "The scope of judicial review under this standard is narrow, and this court cannot merely substitute its judgment for that of the IBLA." Fallini, 963 F.2d at 277 (quotation and alterations omitted). We defer to an agency's construction of an ambiguous statute if its interpretation is based on "a permissible construction of the statute." Pathfinder Mines Corp. v. Hodel, 811 F.2d 1288, 1290 (9th Cir.1987) (quoting Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984)).
 
 II. ANALYSIS
 A. Common Carriage
 
 6
 1. Recognition of Authority To Require Common Carriage
 
 
 7
 Archer asserts that the BLM decision-makers had not understood that they had authority to require Simplot to operate the pipeline as a common carrier. This question is one of fact; the IBLA's conclusion should be accepted unless it is arbitrary and capricious. Fallini, 963 F.2d at 277.
 
 
 8
 The IBLA held that "it is undoubted that BLM has authority to require a right-of-way holder to operate an authorized pipeline as a common carrier in certain circumstances, consistent with the broad discretion accorded to BLM under the FPLMA." John D. Archer, 120 IBLA at 297. It also found that the BLM considered the impact of not requiring Simplot to operate as a common carrier. Id. at 300. Implicit in this finding is the conclusion that the BLM knew it could require common carriage. We find adequate support for this conclusion in the record. It was not arbitrary or capricious.
 
 
 9
 2. The BLM Considered But Rejected Common Carriage
 
 
 10
 The IBLA found that the BLM adequately, "albeit briefly," considered the "impact on competing producers of not requiring common carrier operation but concluded that the impact would be insignificant." Archer, 120 IBLA at 299. Archer protests that this finding was insufficient. In his view, the statute condemns "any degree of anti-competitive use of public lands."
 
 
 11
 In urging us to adopt his interpretation of the statute, Archer misconceives the court's role. We do not interpret the statute de novo. We determine only whether the agency's interpretation is "a permissible construction of the statute." Fallini, 963 F.2d at 277.
 
 
 12
 Although neither the BLM nor the IBLA expressly interpreted the statute, their construction is implicit in their findings. The IBLA found that phosphate producers who did not have access to the pipeline would, "to some extent, be at a competitive disadvantage." But it approved the BLM's finding that "there was 'unlikely' to be any substantial negative effect on competing producers from not requiring Simplot to operate the pipeline as a common carrier when alternative rail service was available and another pipeline could be constructed."[1] Archer, 120 IBLA at 299. This finding, coupled with the decision not to condition the right-of-way, implies that the agency did not perceive a need to protect Simplot's competitors absent a "substantial negative effect."
 
 
 13
 This interpretation is a "permissible construction" of the FLPMA. Pathfinder Mines, 811 F.2d at 1290. Nothing in the language or legislative history of the FLPMA suggests that Congress intended to condemn any and all competitive advantages that might result from activities requiring rights-of-way over federal lands.
 
 
 14
 We find nothing arbitrary, capricious, or contrary to law in the IBLA's conclusion that the BLM adequately considered the effect of the right-of-way on competition and properly determined that a condition of common carriage was unnecessary.
 
 B. Sufficiency of the BLM's Record
 
 15
 Archer argues that once he raised the issue of the pipeline's effect on competition, the BLM was bound to elicit information from Simplot on the subject. He contends that section 1761 imposes on the BLM and Simplot a duty to make an extensive record regarding the effect of the pipeline on competition. In the absence of such a record, Archer reasons, any conclusion the BLM reached about the effect on competition was necessarily arbitrary and capricious.
 
 
 16
 Section 1761 by its plain language creates only a duty to collect the information the agency "deems necessary" to its determination whether to grant the right-of-way and how to condition it. Once the BLM determined, based on the availability of alternative means to transport competitors' phosphate, that "substantial negative effects would be unlikely," it had no duty to gather more information on the subject. See, e.g., Michigan Public Power Agency v. FERC, 963 F.2d 1574, 1580 (D.C.Cir.1992) (agencies afforded wide deference in predicting the likelihood of future events and need not investigate hypotheticals with no evident basis in fact).
 
 
 17
 The IBLA found that "it is impossible to gauge the extent" of the relative disadvantage of not having access to a pipeline "in the absence of any proffer of evidence by Archer regarding, at least," the cost of rail transport, the cost of expanding the proposed pipeline, or the cost of building a second pipeline. Archer, 120 IBLA at 299 (emphasis added). In coming to this conclusion, Archer contends, the agency impermissibly placed on him the burden of submitting evidence, a burden that section 1761 placed on Simplot. We disagree.
 
 
 18
 The Supreme Court has cautioned against interfering in the formulation of agency procedures, including agency decisions as to when and how to respond to public comment. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, 435 U.S. 519, 554 (1978) (approving agency decision to require third parties to make an "affirmative showing" before it would consider the additional alternatives they advocate). The Court in Vermont Yankee declared that intervenors in an agency proceeding should not be entitled to make "cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seek[ ] to have that agency determination vacated on the ground that the agency failed to consider matters" presented. Id. See also Michigan Public Power, 963 F.2d at 1583 (whether allegations of anticompetitive effect are sufficiently concrete and sufficiently relevant to warrant hearing is left to agency's discretion).
 
 
 19
 Although the Court in Vermont Yankee was concerned with agency determinations under the National Environmental Policy Act, its warning is equally applicable in this context. We follow the Supreme Court's directive to leave the conduct of proceedings in the hands of the agencies. The BLM could properly place on Archer the burden of coming forward with evidence of the nature and extent of the competitive disadvantage created.
 
 III. CONCLUSION
 
 20
 The decisions of the BLM and the IBLA were not arbitrary, capricious or contrary to law. The district court's decision to grant summary judgment in favor of the Secretary of the Interior and Simplot is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Simplot suggests that the BLM satisfies the dictates of section 1761 when it concludes that its action does not interfere with competition. Under this view, the BLM did all that was required by ensuring that the right-of-way was not exclusive so that Simplot's competitors were not deprived of the opportunity to build their own pipeline. While this may be a permissible construction of the statute, it does not appear to be the one the IBLA employed. We "may not supply a reasoned basis for the agency's action that the agency itself has not given." Dioxin/Organochlorine Ctr. v. Clarke, 57 F.3d 1517, 1525 (9th Cir.1995) (quotation omitted)