811 F.2d 1288
 17 Envtl. L. Rep. 20,535
 PATHFINDER MINES CORPORATION, Plaintiff-Appellant,
v.
Donald HODEL,* Secretary of the United States
Department of Interior, and the United States of
America, Defendants-Appellees,
and
Arizona Wildlife Federation and National Wildlife
Federation, Defendants- Intervenors-Appellees.
 No. 85-2834.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1986.
Decided March 3, 1987.
 
 John C. Lacy, Tucson, Ariz., for plaintiff-appellant Pathfinder Mines corp.
 Robert L. Klarquist, Washington, D.C., Stephen M. McNamee, U.S. Atty., John R. Mayfield, Asst. U.S. Atty., Phoenix, Ariz., for defendants-appellees U.S.
 Kimberly J. Graber, Phoenix, Ariz., for defendants-intervenors-appellees Arizona Wildlife Federation and National Wildlife Federation.
 Appeal from the United States District Court for the District of Arizona.
 Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Pathfinder Mines Corporation (Pathfinder) appeals the district court's determination that 22 mining claims located in the Grand Canyon National Game Preserve were void ab initio. The district court held that the lands in question were withdrawn from mineral entry when the Game Preserve was created. We affirm.
 
 Background
 
 2
 In response to Pathfinder's inquiry, the United States Department of Interior informed Pathfinder that lands within the Game Preserve were withdrawn from mineral entry. Subsequently, Pathfinder located 22 mining claims within the Game Preserve pursuant to the General Mining Law of 1872. 30 U.S.C. Sec. 21 et seq. The Bureau of Land Management declared the claims void ab initio, and the Department of Interior Board of Land Appeals (IBLA) affirmed. The IBLA determined that the statute creating the Preserve impliedly withdrew Preserve lands from entry because mineral entry was inconsistent with the purposes of the Game Preserve. 70 IBLA 264 (1983).
 
 
 3
 Pathfinder appealed the IBLA decision to the district court for review under the Administrative Procedure Act. 5 U.S.C. Secs. 701-706. The National Wildlife Federation and the Arizona Wildlife Federation intervened in support of the Government. The district court granted summary judgment for the Government.[1]
 
 Standard of Review
 
 4
 The summary judgment rested on the district court's construction of federal statutes. Issues of statutory construction are questions of law which we ordinarily review de novo. United States v. McConney, 728 F.2d 1195 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Under the Administrative Procedure Act, however, we may set aside only agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A).
 
 
 5
 Where Congress has not addressed the precise question at issue, we inquire only whether, given the ambiguity, the agency's interpretation is "based on a permissible construction of the statute." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); see Kunaknand v. Clark, 742 F.2d 1145, 1150 (9th Cir.1984). We must, however, give effect to the unambiguously expressed intent of Congress. Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82.
 
 Discussion
 
 6
 The district court held that 1) the mineral lands in question are part of the Grand Canyon National Forest Reserve (now the Kaibab National Forest), 2) the Game Preserve, which is composed of National Forest lands, includes the disputed mineral lands, 3) entry under the General Mining Law of 1872 would be inconsistent with the purposes of the Game Preserve, and 4) all lands within the Game Preserve were withdrawn from mineral entry under the General Mining Law of 1872 when the Game Preserve was established. We agree.
 
 
 7
 A. Inclusion Of Mineral Lands In The Game Preserve[2]
 
 
 8
 The Proclamation creating the Game Preserve states thatall those lands within the Grand Canyon Forest Reserve, lying north and west of the Colorado River, in the Territory of Arizona, are designated and set aside for the protection of game animals, and ... as a breeding place therefor, and that the hunting, trapping, killing or capturing of game animals [in the Game Preserve] is unlawful.
 
 
 9
 34 Stat. 3263, 3264 (1906).[3] Pathfinder argues that the Organic Act of 1897 excludes mineral lands from forest reserves, and that the Game Preserve, which is composed of forest reserve lands, does not include mineral lands lying within the Preserve's exterior boundaries. Lands in the public domain which have not been withdrawn from mineral entry are open to entry under the General Mining Law of 1872. 30 U.S.C. Sec. 22.
 
 
 10
 The Organic Act of 1897 states that it was not the intent of Acts authorizing the creation of Forest Reserves "to authorize the inclusion therein of lands more valuable for the mineral therein ... than for forest purposes." 16 U.S.C. Sec. 475. Upon certain conditions,
 
 
 11
 any public lands embraced within the limits of any such forest which, after due examination by personal inspection of a competent person appointed for that purpose by the Secretary of the Interior, shall be found better adapted for mining ... than for forest usage, may be restored to the public domain.
 
 
 12
 16 U.S.C. Sec. 482 (emphasis added).
 
 
 13
 If the Organic Act excludes lands more valuable for mineral purposes from Forest Reserves, there would be no need to provide for the restoration of mineral lands to the public domain. See 16 U.S.C. Sec. 482 (quoted above). Furthermore, the Organic Act provides that "mineral lands in any [forest reservation] ... shall continue to be subject" to entry under the existing mining laws of the United States.[4] 16 U.S.C. Sec. 482. If mineral lands were excluded from forest reservations by virtue of 16 U.S.C. Sec. 475, there would have been no need to provide for entry onto mineral lands in forest reservations.
 
 
 14
 The Game Preserve includes mineral lands.
 
 
 15
 B. Game Preserve Lands Are Not Open To Entry Under The General Mining Law of 1872
 
 
 16
 Land may be withdrawn from mineral entry either expressly or "by inference so strong as to clearly indicate an intention" to withdraw the land. Authority to Withdraw Lands Within a Forest Reserve, 35 L.D. 262, 265 (1906); see A. Jackson Birdsell, A-25440 (January 31, 1949). Neither the statute authorizing nor the proclamation creating the Game Preserve states whether Preserve lands are open to entry under the General Mining Law. However, the express purposes of the Game Preserve are incompatible with entry under the General Mining Law of 1872.
 
 
 17
 The Game Preserve was established "for the protection of game animals, and ... as a breeding place therefor." 16 U.S.C. Sec. 478. To this end, the Act and Proclamation prohibit hunting, trapping, killing or capturing game animals in the Preserve, except as prescribed by the Secretary of Interior. 16 U.S.C. Sec. 685, 34 Stat. 3263.
 
 
 18
 The General Mining Law of 1872 permits private individuals to acquire fee title to land containing valuable mineral deposits. 30 U.S.C. Secs. 22, 29. Piecemeal alienation of lands within the Game Preserve would interfere with the protection and propagation of game animals.[5] Private ownership of land within the Preserve was no more consistent with Preserve purposes in 1906 than private ownership would be in 1987. When Congress and the President set aside lands for "the protection of game animals, and ... as a breeding place therefor," they could not have intended that Game Preserve lands would be open to entry under the General Mining Law of 1872.
 
 
 19
 Pathfinder contends that Congress knew how to withdraw lands from mineral entry and that the absence of an express withdrawal indicates that Congress intended that the Preserve be open to mining. Pathfinder cites several statutes, contemporaneous with the creation of the Preserve, in which Congress explicitly withdrew lands from mineral entry. These statutes do not indicate that Congress intended the Game Preserve to be open to entry. Given the absence of any discussion of mining in the legislative history of the Preserve, the most that can be said is that Congress did not consider whether Preserve lands ought to be open to entry.
 
 
 20
 The absence of an express withdrawal does not cure the fundamental incompatibility of entry under the General Mining Law with the protection and propagation of game animals. A tenuous inference from Congressional silence may not defeat the express purposes of the Preserve. Indeed, the IBLA has ruled (in this case and others) that game preserve lands are withdrawn from entry where full exercise of rights under mining laws would "jeopardize or impair or destroy the usefulness of the reserve as a wildlife refuge." Applicability of Mining Laws to Revested Oregon and California Reconveyed Coos Bay Grant Lands, 57 I.D. 365, 372 (1941) (citations omitted); see A. Jackson Birdsell, A-25440 (January 31, 1949).
 
 
 21
 Next, Pathfinder argues that the statutory prohibition of "hunting, trapping, killing or capturing" game animals is exclusive and that mining must be allowed (expressio unius est exclusio alterius ). The purpose of the Preserve is the protection and propagation of game animals. The prohibitions on hunting, trapping, killing and capturing are means by which Congress sought to effectuate the purposes of the Preserve. Unless Congress states that the list of prohibited activities is exclusive, we look to the purposes of the legislation to determine whether an activity is permissible under the statute.[6] See FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 31-32, 102 S.Ct. 38, 41-42, 70 L.Ed.2d 23 (1981).
 
 
 22
 Pathfinder contends that the Department of Interior's issuance of 13 patents early in the history of the Preserve indicates that the Department considered Preserve lands open to entry under the General Mining Law of 1872. The Department replies that the patents were either based on valid pre-existing rights or issued erroneously. The Government subsequently reacquired all of these parcels. The district court thought it unlikely that the basis of the patents could ever be conclusively determined. Pathfinder Mines Corp., 620 F.Supp. at 344. The fact that patents were issued, without more, does not indicate that the Department considered Preserve lands open to entry. Even if the Department at one time considered Preserve lands open to mineral entry, it would not make sense for the Government to reacquire lands, only to again lose them under the General Mining Law of 1872.
 
 
 23
 In a similar vein, Pathfinder cites the withdrawal of one acre for administrative purposes in 1909 as evidence that the Department considered Preserve lands open to mineral entry. The Department later revoked the withdrawal as being unnecessary. The Department asserts that the clause withdrawing the site from mineral entry was simply boilerplate that would have been eliminated but for administrative oversight.
 
 
 24
 Even if the Department's withdrawal of the one acre site and the issuance of the patents indicated that the Department at one time considered Preserve lands open to entry, the Department was free to correct its interpretation of the law. The deference courts owe contemporaneous agency interpretations of statutes (see Andrus v. Shell Oil Co., 446 U.S. 657, 667-68, 100 S.Ct. 1932, 1938-39, 64 L.Ed.2d 593 (1980)) must not bind agencies to interpretations that are palpably incorrect. Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 863, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984) ("An initial agency interpretation is not instantly carved in stone.")
 
 
 25
 Finally, Pathfinder argues that the political climate at the time the Preserve was created was such that any suggestion of withdrawal of mineral lands would have generated "a storm of protest." The record does not adequately support this assertion. In any event, silence of the body politic is not reliable evidence of Congressional intent.
 
 Conclusion
 
 26
 The Game Preserve includes mineral lands. Entry under the General Mining Law of 1872 is incompatible with the express purposes of the Preserve. Accordingly, all Preserve lands were withdrawn from entry under the General Mining Laws[7] upon creation of the Preserve.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Donald Hodel, the current Secretary of United States Department of the Interior, is substituted for former Secretary William Clark. See Fed.R.App.P. 43(c)(1)
 
 
 [1]
 We have jurisdiction under 28 U.S.C. Sec. 1291
 
 
 [2]
 We do not recapitulate in its entirety the district court's thoughtful and extensive analysis of the statutes governing this case. See Pathfinder Mines Corp. v. Clark, 620 F.Supp. 336, 339-46 (D.Ariz.1985)
 
 
 [3]
 The Proclamation tracks the language of the statute authorizing the designation of the Game Preserve. See 34 Stat. 607
 
 
 [4]
 Such entry was, and is, subject to regulatory and statutory constraints. 16 U.S.C. Sec. 482; see United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981)
 
 
 [5]
 The potential effect on the Preserve is not trivial: 2247 claims on lands within the Preserve had been filed by the time the parties moved for summary judgment
 
 
 [6]
 For example, overgrazing was one of the concerns that prompted Congress to authorize the creation of the Game Preserve. H.R.Rep. No. 4973, 59th Cong., 1st Sess. at 2 (1906). If Pathfinder's construction were accepted, the Game Preserve could be subject to overgrazing because grazing is not one of the activities that Congress expressly restricted or prohibited
 
 
 [7]
 We do not decide whether mining under authority other than the General Mining Law of 1872 would be inconsistent with the purposes of the Game Preserve. See, e.g., United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981)